Joy Marie FRIEDMAN, Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent.

No. C9–89–1708.

Supreme Court of Minnesota.

June 7, 1991.

As Clarified on Petition for Rehearing Aug. 15, 1991.

25 minutes because the testing unit was in use. Friedman asked what her rights were and whether she could consult an attorney. The officer did not allow her to contact an attorney.

During the wait, another officer took Friedman into a video taping room. He questioned her on tape. The arresting officer read the implied consent advisory to Friedman. The advisory stated that Friedman's driver's license would be revoked for 1 year if she refused the chemical test for blood alcohol, that the refusal or the results of the test would be used against her at trial, and that she had a right to consult an attorney after testing. The officer read the advisory three times. Friedman told him that she didn't understand the advisory and that she had already been tested in the squad car. The police took Friedman's response as a refusal to be tested, and her driver's license was revoked for 1 year pursuant to Minn.Stat. § 169.123, subd. 4 (1990).

William R. Kennedy, Mark D. Fiddler and Peter Gorman, Asst. Hennepin County Public Defenders, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Joseph Plumer, Sp. Asst. Atty. Gen., Public Safety Div., St. Paul, for respondent.

YETKA, Justice.

On March 12, 1989, the Commissioner of Public Safety issued to Joy Marie Friedman a notice and order of revocation of her driver's license for 1 year for refusing to take an implied consent breath test. Friedman sought judicial review, but the revocation was sustained in an order by the district court. The district court was affirmed by the Minnesota Court of Appeals. 455 N.W.2d 93. We reverse.

On the evening of March 12, 1989, Joy Friedman was arrested by a Minneapolis police officer for DWI following her failure of a preliminary breath test. The officer took Friedman to the police station for an intoxilyzer test. They were forced to wait

The issue before this court is: When does the right to counsel in a DWI proceeding attach?

## I.

The right to counsel is a long-established principle in this nation. Under the common law of England, those accused of felonies had no right to retain counsel. *See* W. Beaney, *The Right to Counsel in American Courts* 8–9 (1955). In 1695, Parliament enacted a statute which permitted those accused of treason to retain counsel, but for all other felonies, there was no such provision until 1836. *Id.* at 9. Illogically, for minor offenses, including libel, perjury, battery, and conspiracy, counsel was permitted. *Id.* at 8. Blackstone denounced the English rule as inhumane. 4 W. Blackstone, *Commentaries* *355 (cited in *Powell v. Alabama*, 287 U.S. 45, 60–61, 53 S.Ct. 55, 60–61, 77 L.Ed. 158 (1932)).

The American colonies rejected the harsh English rule. Even before the federal Constitution was adopted, the constitutions of Maryland, Massachusetts, New Hampshire, New York and Pennsylvania granted the accused in criminal proceedings the right to

retain counsel. *Powell v. Alabama,* 287 U.S. 45, 61–62, 53 S.Ct. 55, 61–62, 77 L.Ed. 158 (1932). Delaware, North Carolina, South Carolina, Virginia, Connecticut, Georgia, and Rhode Island early in their history adopted constitutional or statutory provisions guaranteeing the right to counsel. *Id.* at 62–64, 53 S.Ct. at 61–62. When James Madison drafted the federal Bill of Rights, he drew upon existing provisions in various state constitutions. Force, *State "Bills of Rights": A Case of Neglect and the Need for a Renaissance,* 3 Val. U.L.Rev. 125, 136 (1969).

There is no history of the intentions surrounding the adoption of the right to counsel embodied in the sixth amendment of the United States Constitution. The sixth amendment provides: "In all criminal prosecutions, the accused shall * * * have the assistance of counsel for his defense." U.S. Const. amend. VI. Although there was debate over other amendments, including religious freedom, free speech and free press, and the right to bear arms, there was no such debate over the clause granting assistance of counsel in criminal proceedings. *See* I Annals of Congress 756 (proposing right to counsel), 757–60 (religious freedom), 731–49 (free speech and free press), 749–56 (right to bear arms) (1834). It may be that the federal courts were perceived to have jurisdiction over only a small number of criminal cases. W. Beaney, *supra,* at 25. The extent of the right to counsel thus was left implicitly to be determined by the states.

State courts always have had the power to interpret their own constitutions. Before the fourteenth amendment was adopted, state courts determined questions of individual rights exclusively according to state constitutions. *See* Fleming & Nordby, *The Minnesota Bill of Rights: "Wrapt in the Old Miasmal Mist",* 7 Hamline L.Rev. 51, 56 (1984).

In recent years, as the United States Supreme Court has retrenched on Bill of Rights issues, state courts have begun to interpret expansively the rights guaranteed under their own state constitutions.[1] Commentators have noted and encouraged the trend. *See, e.g.,* Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv.L.Rev. 489 (1977); Countryman, *Why a State Bill of Rights?,* 45 Wash.L.Rev. 454 (1970); Falk, *The State Constitution: A More Than "Adequate" Non Federal Ground,* 61 Calif.L.Rev. 273 (1973); Fleming & Nordby, *The Minnesota Bill of Rights: "Wrapt in the Old Miasmal Mist",* 7 Hamline L.Rev. 51 (1984); Force, *State "Bills of Rights": A Case of Neglect and the Need for a Renaissance,* 3 Val.U.L.Rev. 125 (1969); Linde, *First Things First: Rediscovering the States' Bills of Rights,* 9 U.Balt.L.Rev. 379 (1980); Morris, *New Horizons for a State Bill of Rights,* 45 Wash.L.Rev. 474 (1970).

State courts must follow the United States Supreme Court in matters of federal constitutional law. They are free to interpret their own law, however, so as to provide greater protection for individual rights than that which the federal Constitution minimally mandates. *Pruneyard Shopping Center v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980). Rulings which rest on adequate independent state grounds are not subject to review by the United States Supreme Court. *Herb v. Pitcairn,* 324 U.S. 117, 125–26, 65 S.Ct. 459, 462–64, 89 L.Ed. 789 (1945) (United States Supreme Court's "only power over state judgments is to correct them to the extent that they incorrectly adjudge federal rights").

In their expansion of the rights of individuals, states have been particularly attentive to the protection of those citizens accused of crimes.[2] The United States Su-

---

1. The trend for states to interpret the provisions of their own constitutions has become so pervasive that the National Association of Attorneys General began in December 1987 to publish the State Constitutional Law Bulletin, which reports monthly on cases decided pursuant to state constitutions.

2. *See, e.g., Roman v. State,* 570 P.2d 1235 (Alaska 1977) (rights of parolee); *Zehrung v. State,* 569 P.2d 189 (Alaska 1977), *modified on reh'g,* 573 P.2d 858 (1978) (search incident to misdemeanor, bail rights); *Davenport v. State,* 568 P.2d 939 (Alaska 1977) (rights of parolee); *Scott v. State,* 519 P.2d 774 (Alaska 1974) (discovery

preme Court has recognized the right of a state, under its own law, "to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards." *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975). A number of states have interpreted their own constitutions to grant a more expansive right to counsel to those accused of crimes than the right afforded by the sixth amendment of the federal Constitution.[3]

Minnesota has a long tradition of assuring the right to counsel. Article I, section 6 of the Minnesota Constitution requires that "[i]n all criminal prosecutions the accused shall enjoy the right * * * to have the assistance of counsel in his defense." Minn. Const. art. I, § 6. Minnesota Stat-

power of prosecutor); *Baker v. City of Fairbanks,* 471 P.2d 386 (Alaska 1970) (right to trial by jury for minor offenses, overruling *Knudsen v. City of Anchorage,* 358 P.2d 375 (Alaska 1960)); *State v. Bolt,* 142 Ariz. 260, 689 P.2d 519 (1984) (exclusionary rule); *People v. Anderson,* 6 Cal.3d 628, 100 Cal.Rptr. 152, 493 P.2d 880 (1972) (death penalty is "cruel and unusual" punishment in violation of state constitution); *People v. Paulsen,* 198 Colo. 458, 601 P.2d 634 (1979) (double jeopardy); *contra United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978); *People v. Clyne,* 189 Colo. 412, 541 P.2d 71 (search incident to traffic arrest was violation of statute); *State v. Santiago,* 53 Haw. 254, 492 P.2d 657 (1971) (statement obtained in violation of *Miranda* may not be used for impeachment); *State v. Pokini,* 45 Haw. 295, 367 P.2d 499 (1961) (state constitution mandates exclusionary rule); *State v. Mullen,* 216 N.W.2d 375 (Iowa 1974) (entrapment defense on statutory grounds); *State v. Sklar,* 317 A.2d 160 (Me.1974) (state constitution permits trial by jury for all criminal prosecutions, not just "serious" violations); *contra Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (federal Constitution requires trial by jury for "serious", but not "petty" offenses); *State v. Collins,* 297 A.2d 620 (Me.1972) (burden of proof in determining voluntariness of confession); *District Attorney for the Suffolk Dist. v. Watson,* 381 Mass. 648, 411 N.E.2d 1274 (1980) (death penalty violates state constitution); *People v. Beavers,* 393 Mich. 554, 227 N.W.2d 511 (1974), *cert. denied,* 423 U.S. 878, 96 S.Ct. 152, 46 L.Ed.2d 111 (1975) (monitoring conversation); *People v. White,* 390 Mich. 245, 212 N.W.2d 222 (1973) (double jeopardy); *People v. Turner,* 390 Mich. 7, 210 N.W.2d 336 (1973) (entrapment defense); *People v. Sundling,* 153 Mich.App. 277, 395 N.W.2d 308 (1986) (search and seizure); *State v. Granberry,* 491 S.W.2d 528 (Mo.1973) (overruling *State v. Nimrod,* 484 S.W.2d 475 (Mo.1972)) (use of prior inconsistent statements as substantive evidence); *State v. Johnson,* 221 Mont. 503, 719 P.2d 1248 (1986) (right to counsel); *State v. Hogg,* 118 N.H. 262, 385 A.2d 844 (1978) (double jeopardy); *State v. Phinney,* 117 N.H. 145, 370 A.2d 1153 (1977) (burden of proof in determining voluntariness of confessions); *State v. Mollica,* 114 N.J. 329, 554 A.2d 1315 (1989) (search and seizure standard); *State v. Johnson,* 68 N.J. 349, 346 A.2d 66 (1975) (consent searches); *State v. Burkholder,* 12 Ohio St.3d 205, 466

N.E.2d 176, *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984) (exclusionary rule in probation revocation); *State v. Caraher,* 293 Or. 741, 653 P.2d 942 (1982); *State v. Benoit,* 417 A.2d 895 (R.I.1980) (search of impounded vehicle); *State v. Opperman,* 247 N.W.2d 673 (S.D.1976) (vehicle inventory searches); *Parham v. Municipal Court of Sioux Falls,* 86 S.D. 531, 199 N.W.2d 501 (1972) (trial by jury for petty offenses); *State v. Becker,* 130 Vt. 153, 287 A.2d 580 (1972) (trial by jury for minor offenses); *State v. Simpson,* 95 Wash.2d 170, 622 P.2d 1199 (1980) (defendants have automatic standing under state constitution to challenge search or seizure of contraband or stolen goods); *contra United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980).

3. *See, e.g., Blue v. State,* 558 P.2d 636 (Alaska 1977) (right to counsel at pre-indictment lineup); *Roberts v. State,* 458 P.2d 340 (Alaska 1969) (right to counsel at taking of handwriting samples); *Nichols v. State,* 425 P.2d 247 (Alaska 1967) (right to counsel on application to vacate or set aside sentence); *State v. Stoddard,* 206 Conn. 157, 537 A.2d 446 (1988) (police are required under state constitution to inform suspect in custody of attorney's efforts to reach him); *Bryan v. State,* 571 A.2d 170 (Del.1990) (failure of police to inform defendant his attorney was on telephone was denial of right to counsel as guaranteed by state constitution); *Haliburton v. State,* 514 So.2d 1088 (Fla.1987) (failure of police to inform defendant his attorney was at stationhouse was violation of state constitution); *People v. Jackson,* 391 Mich. 323, 217 N.W.2d 22 (1974) (requiring counsel at photo lineup and rejecting *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973)); *People v. Skinner,* 52 N.Y.2d 24, 436 N.Y.S.2d 207, 417 N.E.2d 501 (1980) (suspect cannot waive right to counsel unless in the presence of counsel); *State v. Spencer,* 305 Or. 59, 750 P.2d 147 (1988) (driver arrested for DWI has right to counsel under state constitution before deciding to submit to breath test); *Commonwealth v. Richman,* 458 Pa. 167, 320 A.2d 351 (1974) (right to counsel attaches at arrest); *State v. Welch,* 135 Vt. 316, 376 A.2d 351 (1977) (right to counsel attaches before chemical test); *State v. Fitzsimmons,* 93 Wash.2d 436, 610 P.2d 893 (1980) (police denial of access to appointed counsel was violation of right to counsel as guaranteed by state law).

utes section 481.10, which has been the law in this state since 1887, provides:

> All officers or persons having in their custody a person restrained of liberty upon any charge or cause alleged, except in cases where imminent danger of escape exists, shall admit any resident attorney retained by or in behalf of the person restrained, or whom the restrained person may desire to consult, to a private interview at the place of custody. Such custodians, upon request of the person restrained, as soon as practicable, and before other proceedings shall be had, shall notify any attorney residing in the county of the request for a consultation with the attorney. Every officer or person who shall violate any provision of this section shall be guilty of a misdemeanor and, in addition to the punishment prescribed therefor shall forfeit $100 to the person aggrieved, to be recovered in a civil action.

Minn.Stat. § 481.10 (1990). In *State v. Schabert*, 218 Minn. 1, 9, 15 N.W.2d 585, 589 (1944), we construed the statute and held that interrogation of an accused person was a "proceeding."

## II.

We turn now to our case law in the area of DWI proceedings. The respondent relies on *State v. Palmer*, 291 Minn. 302, 191 N.W.2d 188 (1971), where we held that, under the Minnesota Constitution, the right to counsel does not extend to a DWI license revocation because of the civil or administrative nature of the proceeding. *Id.* at 306, 191 N.W.2d at 190. However, we subsequently questioned the validity of the "civil" label of the DWI license revocation proceeding in *Prideaux v. State, Dep't of Public Safety*, 310 Minn. 405, 247 N.W.2d 385 (1976):

> The bases of all these [cases denying the right to counsel], including our decision in *Palmer*, have been that driver's license revocation is a civil proceeding, and, as a corollary, that the taking of a chemical test is not a "critical stage" in a criminal prosecution. Upon reflection, we have some doubt as to the continuing vitality of these cases.

*Id.* at 408–09, 247 N.W.2d at 388 (footnote omitted).

We then articulated in *Prideaux* three reasons why the "civil" label was subject to question. First, a driver's license revocation for failure to submit to chemical testing is "necessarily and inextricably intertwined with an undeniably criminal proceeding—namely, prosecution for driving while under the influence of an alcoholic beverage." *Id.* at 409, 247 N.W.2d at 388. Second, the revocation of a driver's license has, in most instances, the same impact as the traditional criminal sanctions of a fine and imprisonment. Thus, "[w]e cannot allow a 'civil' label to obscure the quasi-criminal consequences of revocation to the ordinary citizen." *Id.* at 410, 247 N.W.2d at 389. Third, we noted that the choice of whether to submit to the chemical testing procedures is a very important one to the individual driver. A driver must make a critical and binding decision regarding chemical testing, a decision that will affect him or her in subsequent proceedings. Therefore, when asked to submit to a chemical test, a driver finds him- or herself at a "critical stage" in the DWI process. *Id.* at 411, 247 N.W.2d at 389–90. However, we did not have to reach the constitutional issues in *Prideaux*, finding instead that the Minnesota Legislature, pursuant to Minn.Stat. § 481.10, did not intend a blanket denial of a right to counsel. *Id.* at 414, 247 N.W.2d at 391.

Subsequent to *Prideaux*, we reached the right-to-counsel issue in *Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512 (Minn.1985). We held that the decision of whether to submit to chemical testing was not a "critical stage" in the pretrial investigation. Thus, no right to counsel attached at that point. *Id.* at 515–16. However, *Nyflot* was decided under federal constitutional law. We must now confront directly whether Minnesota constitutional history dictates a different result. Because we do not find the *Nyflot* analysis persuasive under our constitution, we conclude that article I, section 6 requires that the right to counsel attaches at the chemical testing stage.

## III.

We recognize that the purpose of the right to counsel is to protect the lay person who "lacks both the skill and knowledge" to defend him- or herself. *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932). As the United States Supreme Court explained in *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), the expansion of the right to counsel is necessary "when new contexts appear presenting the same dangers that gave birth initially to the right itself." *Id.* at 311, 93 S.Ct. at 2574. As we noted in *Prideaux,* such a context arises in DWI proceedings; the technology involved in the DWI testing procedure makes it "inextricably intertwined with an undeniably criminal proceeding." 310 Minn. at 409, 247 N.W.2d at 388.

■ As the Supreme Court stated in *Ash,* the test for whether the defendant needed assistance of counsel is "whether the accused required aid in coping with legal problems or assistance in meeting his adversary." 413 U.S. at 313, 93 S.Ct. at 2575. In defining what constitutes a "critical stage" in the proceeding, the Court held that it includes "those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel." *Gerstein v. Pugh*, 420 U.S. 103, 122, 95 S.Ct. 854, 867, 43 L.Ed.2d 54 (1975).[4] We adopt this broad definition as we now interpret the right to counsel set forth in the Minnesota Constitution. We believe that a driver who has been stopped for a possible DWI violation and has been asked to submit to a chemical test is at a "critical stage" in DWI proceedings, thus triggering the right to counsel.

The implied consent situation usually begins with a police officer requesting that the accused perform either a preliminary breath test or field sobriety test. Failure of either test can result in the issuance of a ticket or tab charge.[5] Though the police could issue a ticket at this initial confrontation, one is not usually issued until after the implied consent advisory has been recited and the chemical test performed (or not performed if the accused declines to submit).

It was at this point in the process that Friedman requested, and was denied, an opportunity to consult her lawyer. As the facts in this case indicate, she initially agreed to take the preliminary breath test, failed it, and was taken to the police station. She was in police custody and was questioned on video tape. She was told that she would be tested again. When she asked why she had to be tested again, the officer made no attempt to explain. Another officer then read the implied consent advisory. When Friedman expressed confusion about the advisory, requesting a consultation with her attorney, her confused response was deemed a refusal to take the test.

■ In the facts before this court, the driver was confused about the legal ramifications of her decision. As is often the case, the driver at this critical stage looked to the police for guidance. An attorney, not a police officer, is the appropriate source of legal advice. An attorney functions as an objective advisor who could explain the alternative choices. We think the Minnesota Constitution protects the individual's right to consult counsel when confronted with this decision. Thus, to the extent that Minn.Stat. § 169.123 denies access to counsel under these circumstances,

4. In *State v. Hershberger,* 462 N.W.2d 393 (Minn.1990), we approved use of the terms "compelling state interest" and "least restrictive alternative," although they arose from federal doctrine, as embodying concepts that provided guidance as we examined our state constitution. We likewise make use of "critical stage" analysis as we now interpret our Minn. Const. art. I, § 6.

5. The ticket or tab charge is the functional equivalent of a complaint. If the prosecution has not filed a complaint by the time of the defendant's first appearance in court under a gross misdemeanor DWI, the court administrator's office enters on the record a brief statement of the offense charged. "This brief statement serves as a substitute for the complaint and is referred to as a 'tab charge.'" M. Costello, R. Frase & S. Simon, *Minnesota Misdemeanors and Moving Traffic Violations* 48–49 (1990).

we find that it violates Minn. Const. art. I, § 6.

As noted earlier, other courts have taken a similar view, finding a state constitutional basis for expanding the right to counsel at the chemical testing stage of a DWI proceeding. We agree with the Oregon Supreme Court's decision in *State v. Spencer*, 305 Or. 59, 750 P.2d 147 (1988), which gave a more expansive reading than federal law to its state right-to-counsel provision, Or. Const. art. I, § 11. We find persuasive the following statement by that court:

A person taken into formal custody by the police on a potentially criminal charge is confronted with the full legal power of the state, regardless of whether a formal charge has been filed. Where such custody is complete, neither the lack of a selected charge nor the possibility that the police will think better of the entire matter changes the fact that the arrested person is, at that moment, ensnared in a "criminal prosecution." The evanescent nature of the evidence the police seek to obtain may justify substantially limiting the time in which the person may exercise his or her Article I, section 11, right, but it does not justify doing away with it.

305 Or. at 74, 750 P.2d at 155–56.

As the dissent said in *Nyflot:*

If forcing an individual to a police station alone is an intrusion on one's dignity, holding someone incommunicado on top of it makes the intrusion all the more severe. * * *

This grave intrusion on an individual's dignity must be weighed against the state's interests. The state claims that denying a right to counsel will decrease the number of refusals to take the chemical test and increase the number of DWI convictions. Even if consultation with an attorney does increase the number of refusals, those who refuse lose their licenses for a year. Minn.Stat. § 169.123, subd. 4 (1984). Either way, the driver is severely punished and the state relatively unharmed. Even without the chemical test, the driver can still be convicted of driving while intoxicated.

\* \* \* \* \* \*

The person suspected of drunk driving is generally an average citizen in a totally new, confusing, and uncomfortable situation. One's dignity, the dignity of a free citizen to determine one's rights and obligations through consultation with a trusted counselor rather than one's accusers, is gravely intruded upon. This grave intrusion is balanced against, at best, a weak and ill-supported state interest. The state has failed to show that the intrusion is reasonable; thus, denying counsel is constitutionally invalid.

*Nyflot*, 369 N.W.2d at 521 (Yetka, J., dissenting).

We recognize that drunk driving is a serious problem, but we do not believe it justifies cancelling out the protection offered by over 100 years of precedent in Minnesota.

In the years between our decision in *Prideaux* in 1976 and *Nyflot* in 1985, there is no credible evidence that law enforcement was inhibited in any way by a person demanding the right to counsel. The prosecutor in *Nyflot* argued that he believed that there were fewer defendants consenting to the alcohol chemical test than before *Nyflot*, but there was no evidence offered that there were fewer convictions; nor is there evidence that the drunk-driving problem has diminished after *Nyflot*. Similarly, there was no evidence presented here that the number of intoxicated drivers on Minnesota roads has decreased since *Nyflot*. It is strange logic that concludes that there will be more drunk drivers on the road because a driver can consult counsel before taking a test rather than after taking it.

If the objective of DWI prosecution is to get drunk drivers off the highways, into treatment, and on the way to sobriety, an attorney can play a very important role. A good lawyer is not only interested in protecting the client's legal rights, but also in the well-being and mental and physical health of the client. A lawyer has an affirmative duty to be a counselor to his client. *See* Minn.R.Prof.Conduct 2.1 (1985) ("In rendering advice, a lawyer may refer not only to law but to other considerations

such as moral, economic, social and political factors, that may be relevant to the client's situation.") The lawyer may be able to persuade a problem drinker to seek treatment. The prosecution, on the other hand, may be concerned only with getting statistics and convictions. We have ample evidence that a conviction alone does not solve the problem because we read almost daily in the newspapers of long-time inebriates, convicted again and again, who continue to drive and thus maim and kill their innocent victims. The intent should be, in our opinion, not only to convict, but also to get drunk drivers off the roads. In addition to education, there are numerous steps the legislature can take to mitigate the problem, including confiscation of the driver's license, the car plates, or even the automobile itself.

The rights of all citizens embodied in our Minnesota Bill of Rights, however, are so important that they cannot be overridden for temporary expediency in building statistics. Of all those rights embodied in our Bill of Rights, the two most fundamental are the right to counsel and the right to trial by jury. Without them, there can be no constitutional rights at all. Every citizen has learned at an early age that whenever one is in trouble, the first resort should be to contact one's attorney and seek advice. We thus repeat the age-old rule of law that was embodied in our state constitution: The defendant shall have the right to counsel.

However, we also recognize that the evanescent nature of the evidence in DWI cases requires that the accused be given a limited amount of time in which to contact counsel:

> Consistent with this opinion, any person who is required to decide whether he will submit to a chemical test * * * shall have the right to consult with a lawyer of his own choosing before making that decision, provided that such a consultation does not unreasonably delay the administration of the test. The person must be informed of this right, and the police officers must assist in its vindication. The right to counsel will be considered vindicated if the person is provid-ed with a telephone prior to testing and given a reasonable time to contact and talk with counsel. If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel.

*Prideaux*, 310 Minn. at 421, 247 N.W.2d at 394. Thus, we hold that, under the right-to-counsel clause in article I, section 6 of the Minnesota Constitution, an individual has the right, upon request, to a reasonable opportunity to obtain legal advice before deciding whether to submit to chemical testing.

IV.

The dissent asserts that it is inappropriate for judges to vote to overrule the major constitutional decision in *Nyflot*. *Nyflot* was based on federal constitutional grounds. What the dissent ignores is that *Nyflot* itself ignored the reasoning and precedent of the *Prideaux* case decided only 9 years earlier. The dissent also fails to recognize the rapidly growing precedent embodied in recent decisions returning initiative to the individual states in protecting individual liberties through state courts interpreting their own state constitutions. This is a return to the climate that existed at the time the United States Bill of Rights was first adopted. Where the federal courts and the federal criminal justice system have eroded the federal Bill of Rights, it is appropriate for judges of this court to consider the protection provided by our own state bill of rights. The United States Supreme Court has, in effect, encouraged the states to expand their own bills of rights. *See Pruneyard, supra.* This court has historically protected the rights of Minnesota citizens; our decision today is no startling and unjustified shift by this court. We have had a statute since 1877 recognizing the important right to counsel. Today's decision simply reinforces that ancient trend.

What has changed since *Nyflot* is not the membership of the court, but the development of state constitutional law. State courts are returning to local protection of individual liberties as intended by the colo-

nists before there was a United States Supreme Court. Whether the state constitution has language similar to that of the federal Constitution or not, states are free to interpret their own constitutions. *See State v. Fuller,* 374 N.W.2d 722, 726 (Minn. 1985).

The dissent relies on *State v. Hamm,* 423 N.W.2d 379 (Minn.1988), for the proposition that contemporaneous history is a legitimate ground for interpreting the state constitution. Interestingly, today's dissenter dissented in *State v. Hamm.*[6] In *Hamm,* this court found justification for interpreting the state constitution differently from the way the United States Supreme Court interpreted the federal Constitution. We believe that history supports our interpretation today of the right to counsel.

We reiterate these basic reasons for our decision in this case:

1. Since very early statehood, Minnesota has recognized the right to counsel as a fundamental right incorporated in the ancient statute adopted in 1877 and quoted in this opinion.

2. In *Palmer, Prideaux,* and *Nyflot,* this court has struggled with the question of what type of proceeding a DWI stop is and when right to counsel attaches. This struggle has occurred over a period of a quarter century. This case should help resolve with finality that struggle.

3. *Prideaux* came closest to defining this court's position on this subject in 1976. Even though our decision was based on statutory grounds, the dictum in that case also made clear what the court felt of the constitutional rights of defendants.

4. *Nyflot* was decided under the United States Constitution as this court thought the right to counsel would be defined by the United States Supreme Court, not under the Minnesota Constitution.

5. We hold today that, because of Minnesota's lengthy and historic recognition of human rights, human dignity, and the procedural protection for the rights of the criminally accused, detention of drivers suspected of driving while under the influence is a criminal proceeding invoking the right to counsel.

6. We do not disagree with the proposition that drunk driving is a very serious social as well as legal problem. The resolution, however, does not lie in eroding and weakening the Minnesota Bill of Rights and resorting to the law of the Old West. Nor will the solution be impeded by allowing an accused to consult counsel; rather the opposite is the more likely. It is altogether fitting that our constitution be interpreted by this state's highest court to offer greater safeguards of fundamental rights for Minnesota citizens than the protection offered citizens of the United States under the federal Constitution.

7. The legislature has the authority to pass, and in fact has passed, legislation making the penalty for refusal to submit to chemical testing nearly as serious as conviction for the offense itself. The availability of an attorney early in the process can aid in the removal of drunk drivers from the highway and assist in their rehabilitation. Certainly, no laws seem to have worked heretofore to deter the problem of drunk driving. We believe that the legal profession is uniquely qualified to aid in resolving the problem. Other professions and occupations deal with specific objectives of their jobs. It is the legal profes-

---

**6.** This court has overruled precedent for reasons other than those articulated by the dissent. *See, e.g., Hapka v. Paquin Farms,* 458 N.W.2d 683 (Minn.1990) (overruling *Superwood Corp. v. Siempelkamp Corp.,* 311 N.W.2d 159 (Minn. 1981) in regard to UCC pre-emption of the law of negligence in cases involving damage to other property); *Giese v. Green Giant Co.,* 426 N.W.2d 879 (Minn.1988) (declining to follow *Patton v. Thompson Elec. Co.,* 420 N.W.2d 596 (Minn. 1988), in regard to the amount of temporary partial disability compensation where an em-

ployee is working at a reduced-wage job); *Herrly v. Muzik,* 374 N.W.2d 275 (Minn.1985) (declining to follow *Holmquist v. Miller,* 367 N.W.2d 468 (Minn.1985), and *Meany v. Newell,* 367 N.W.2d 472 (Minn.1985), regarding the pre-emption of the dram shop field by the Civil Damages Act); *Wakefield v. Federated Mutual Insurance Co.,* 344 N.W.2d 849 (Minn.1984) (declining to adhere to *Wasche v. Milbank Mutual Insurance Co.,* 268 N.W.2d 913 (Minn.1978), regarding the stacking of priority level insurance coverage).

sion, with its broad educational base stemming from the Constitution itself, its code of professional responsibiity, and its advice to individual citizens in every field of endeavor, that will be looked to with increasing frequency to solve serious social and economic as well as legal problems. We challenge them further with this decision.

8. The dissent points out that this decision affords those charged with DWI privileges given no other accused. That is oversimplification and simply not true. In the case of a DWI, the chemical tests are more than just a search. The act itself could produce the evidence leading to conviction before any trial is even necessary.

Thus, while we hold that the point at which an individual is asked by law enforcement officials to undergo a blood alcohol test constitutes a critical stage in the criminal process and that article I, section 6 of the Minnesota Constitution guarantees an individual in such a situation the limited right to counsel within a reasonable time before submitting to testing, our holding does not justify the sweeping conclusions alleged by the dissent of the Chief Justice.

We have been required to decide a difficult question in a specific situation and have done so. We have held that a "ticket or tab charge" is the functional equivalent of a complaint in a DWI setting, but our holding does not go beyond that. It is unnecessary to speculate or decide issues not before us.

9. We believe that to hold differently could possibly lead to attempts in the future to decriminalize other serious public offenses and redefine them as civil rather than criminal and thus deny the right to counsel and a right to jury trial. Such

denial would further erode fundamental rights that have been acquired over the centuries. Once erosion of these rights begins, where will it end?

We decide this case solely on the basis of article I, section 6 of our Minnesota Constitution, and not on any provision of either federal law or the United States Constitution. The trial court and the court of appeals are reversed.[7]

SIMONETT and GARDEBRING, JJ., took no part in the decision or consideration of this matter.

ON PETITION FOR REHEARING

YETKA, Justice.

We stated in *McDonnell v. Commissioner of Public Safety*, 473 N.W.2d 848, 853 (Minn.1991):

[G]iven the reasonable reliance of law enforcement officials on prior decisions of this court in creating and administering the present Implied Consent Advisory, and given the enormous burden on the administration of justice that would result from giving *Friedman* completely retroactive effect, we limit the application of *Friedman* to the three appeals now before this court, to any case in which the Implied Consent Advisory has been challenged as a violation of the right to counsel guaranteed by the Minnesota Constitution now pending before a district court, before the court of appeals, or before this court, and to any case arising after the date of *Friedman*'s release.

We confronted a similar issue after we filed our decision in *Prideaux v. State, Dep't of Public Safety*, 310 Minn. 405, 247

---

7. Former Chief Justice Popovich presided over oral arguments, over the court conference in this case, and participated in the deliberations of this court when it arrived at a decision.

Because the case was not released for filing until after he left office, his participation cannot officially be recorded in this matter.

N.W.2d 385 (1976). On petition for rehearing, we said:

> Because police officers have reasonably relied on our earlier decision in *State v. Palmer,* 291 Minn. 302, 191 N.W.2d 188 (1971), it was our intent that the informational requirement be applied only to cases arising after the date of the decision. The holding on the facts of the case was more narrow—appellant requested an opportunity to consult with an attorney and his request was denied. These circumstances define the impact of our holding to cases pending on the date of the decision in this court, district court, and county or municipal court. In all other cases predating the decision, no right to counsel will be recognized * * *.

*Id.* at 428, 247 N.W.2d at 398. In *State v. Hamm,* 423 N.W.2d 379, 386 (Minn.1988), we stated that those who had not previously raised the constitutional issue had waived the objection. *Friedman* thus applies retroactively only to cases pending on the date of the *Friedman* decision where the driver properly and in a timely fashion requested an opportunity to consult with an attorney, the request was denied, and the driver properly challenged the denial in district court as a violation of the right to counsel under the Minnesota Constitution. Amendments to pleadings that purport to raise the right-to-counsel issue will not relate back to the original filing date as relation back would be inconsistent with *McDonnell*'s limitation on *Friedman*'s retroactive application. Only if the issue of right to counsel under the Minnesota Constitution had actually been raised in district court prior to June 7, 1991, will *Friedman* apply retroactively.

COYNE, Justice (dissenting).

Had I been a member of the Minnesota legislature in 1984, it is quite possible that I would have voted against the law that today's majority holds violative of the Minnesota Constitution. My role, however, as a judge of the Minnesota Supreme Court is not to decide whether the legislature's policy decision would have been my legislative choice. It is not our opinion of the wisdom of Minn.Stat. § 169.123, subd. 2(b)(4) (1990), which is at issue here; the question is whether the statute rises to the minimum requirements of article I, section 6 of the Minnesota Constitution, and I sharply disagree with the majority's approach to and analysis of this question. My position can be stated simply:

(a) Less than six years ago this court decided that a drunk driving arrestee has "no right, statutory or constitutional," to consult counsel before deciding whether to comply with the statutory obligation to submit to chemical testing. *Nyflot v. Commissioner of Public Safety,* 369 N.W.2d 512, 513 (Minn.1985) (two judges dissenting), *appeal dismissed,* 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). That decision, which comports with recognized principles of constitutional law, constitutes controlling authority in this case.

(b) Denying what seems to me the clear import of *Nyflot,* the majority has neither articulated a satisfactory rationale for disregarding that decision nor proposed a sound basis for interpreting the Minnesota Constitution more broadly than the United States Supreme Court has interpreted the corresponding provision of the United States Constitution. Bluntly stated, the majority has made no attempt to explain why a person arrested for drunken driving is entitled to special treatment: until today at least, no one arrested for any other crime has been accorded a constitutional right to consult a lawyer before submitting to a search.

The right to the assistance of counsel recognized by the Minnesota Constitution corresponds almost exactly with that set out in the sixth amendment to the United States Constitution. The sixth amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by

law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

Article I, § 6 of the Minnesota Constitution, before being amended in 1988, provided:

> In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law. The accused shall enjoy the right to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to have the assistance of counsel in his defense.[1]

From the very beginning it has been clear that the drafters of these (for all practical purposes) identical provisions understood that the right to counsel ensured by these provisions applied only to "criminal prosecutions." The term "criminal prosecution" is a legal term of art then and ever since used to refer not to the investigative, evidence-gathering phase of a proceeding, nor to all proceedings taking place after a suspect is arrested, but only to those proceedings which occur after the state has committed itself to prosecuting the suspect by *formally* charging the suspect with a crime. The right to counsel does not attach until the state has formally made the suspect a defendant, usually either by indictment or by filing a formal complaint or what in some jurisdictions is called an "information."

There is, moreover, a second prerequisite to the attachment of the constitutional right to counsel: the stage of the prosecution must be a "critical stage." *See, e.g., United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), and *State v. Higginbotham*, 298 Minn. 1, 212 N.W.2d 881 (1973) (recognizing that while the "core" purpose of the right to counsel guaranteed by these provisions was to assure the defendant assistance of counsel at a criminal trial, the right contemplated by the provisions includes assistance at all "critical stages" of the proceeding *following* formal commencement of the criminal prosecution).

The presence of one but not the other prerequisite is not enough. That a criminal prosecution has been formally commenced is not enough to invoke the right to counsel if the stage of the proceeding is not a "critical stage." *State v. Higginbotham*, 298 Minn. at 3, 212 N.W.2d at 884. On the other hand, the fact that the stage might otherwise be deemed a "critical stage" does not mean that the suspect has a constitutional right to counsel if the government has not yet formally commenced a criminal prosecution of that suspect. Thus, it has been held that before being formally charged, a suspect has no right to consult a lawyer before submitting to a search or the drawing of a blood sample or before appearing in a lineup.[2] Nor does a defendant

---

**1.** A 1988 amendment overturned this court's decision in *State v. Hamm*, 423 N.W.2d 379 (Minn. 1988), where this court interpreted the above provision as mandating 12 person juries in misdemeanor and gross misdemeanor prosecutions. As amended, the provision now reads:

> In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the county or district wherein the crime shall have been committed, which county or district shall have been previously ascertained by law. In all prosecutions of crimes defined by law as felonies, the accused has the right to a jury of 12 members. In all other criminal prosecutions, the legislature may provide for the number of jurors, provided that a jury have at least six members. The accused shall enjoy the right to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor and to have the assistance of counsel in his defense.

**2.** A suspect has no right under these provisions to consult with an attorney as a prerequisite to giving consent to search, at least before he has been formally charged. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); 3 W. LaFave, *Search and Seizure* § 8.2(k) (2d ed. 1987). A suspect does not have a right to consult with counsel before deciding whether to comply with an order, lawful under the fourth and fifth amendments, to allow a

formally charged have a right to counsel at a photographic display or when providing a handwriting exemplar because neither event is a "critical stage" of the prosecution.[3]

There is, of course, a *"Miranda* right to counsel" which a suspect who is in custody but who has not yet been formally charged may assert before being interrogated. *Miranda v. Arizona*, 384 U.S. 436, 471, 86 S.Ct. 1602, 1626, 16 L.Ed.2d 694 (1966). But the court-created *Miranda* right to counsel is not based on the sixth amendment; it is specifically designed to vindicate the fifth amendment privilege against self-incrimination.[4]  Furthermore, the defendant in the present case does not (nor could she) assert a *Miranda* right to counsel, which applies only to custodial interrogation and has nothing to do with whether an accused has a right to counsel before deciding whether to submit peaceably to a police search.[5]  *South Dakota v. Neville,*

459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748 (1983).

Based on this bedrock of recognized constitutional law, this court has heretofore resisted the temptation to declare that a person arrested for DWI has a constitutional right to consult counsel before deciding whether to submit to chemical testing. In *State v. Palmer*, 291 Minn. 302, 305–07, 191 N.W.2d 188, 190 (1971), we expressly rejected the argument[6] that a driver has a right under the sixth amendment and the corresponding provision of the Minnesota Constitution to consult counsel before deciding whether or not to provide a breath sample: "It is well settled that under the Federal and Minnesota Constitutions the accused, in all criminal prosecutions, shall enjoy the right to have assistance of counsel in his defense," but the court concluded that the constitutional right to counsel did not apply in proceedings for revocation of a driver's license. Three justices dissented, but only on statutory grounds; the dissen-

trained technician to remove a blood sample as part of a precharge criminal investigation. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).  While an accused has a right to counsel at a post-charge lineup, *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), and *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the suspect does not have a right to counsel at a lineup held before charges have been formally filed, *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), *State v. Eppler,* 362 N.W.2d 315, 317 n. 1 (Minn.1985), and *State v. Hyvare,* 354 N.W.2d 835, 836 (Minn. 1984).

3. A suspect does not have a right to counsel at a photographic display, even a postindictment photographic display, because such a display does not fit the test of what is a "critical stage" in the way that a post-charge lineup fits the test. *United States v. Ash,* 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973), and *State v. Higginbotham,* 298 Minn. 1, 6, 212 N.W.2d 881, 884 (1973). An accused has no right to counsel when lawfully directed to provide a handwriting exemplar, even after issuance of a formal charge, because the taking of such an exemplar is not a "critical stage" of the prosecution. *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967).

4. The distinction between the right to assistance of counsel guaranteed by the sixth amendment to the federal constitution and its Minnesota counterpart and what is called the fifth amend-

ment *Miranda* right to counsel is well summarized in the following excerpt from this court's *recent unanimous decision* in *State v. Ronnebaum,* 449 N.W.2d 722, 724 (Minn.1990):

The sixth amendment right to counsel attaches once the prosecution of the defendant is formally commenced, usually by the filing of the complaint. *United States v. Gouveia,* 467 U.S. 180, 187, 104 S.Ct. 2292, 2296, 81 L.Ed.2d 146 (1984). What some refer to as the fifth amendment *right to counsel* is a court-created right to counsel as part of the *Miranda* safeguards in connection with custodial interrogation. *Id.* at 188 n. 5 [, 104 S.Ct. 2297 n. 5]; *Michigan v. Tucker,* 417 U.S. 433, 444, 94 S.Ct. 2357, 2363, 41 L.Ed.2d 182 (1974). That right to counsel attaches only when a suspect invokes the right during custodial interrogation. Thus, a suspect has no right to counsel, even if he asks for it, if no charge has been filed against him and if he is not "in custody." *State v. Murphy,* 380 N.W.2d 766, 769–70 n. 2 (Minn.1986) (addressed the issue under both federal and state constitutions).

5. One has, of course, no right to resist a search or arrest, even an illegal one, and one can be prosecuted for any criminal offense committed in resisting a search or an arrest. *City of St. Louis Park v. Berg,* 433 N.W.2d 87, 89–91 (Minn. 1988).  *See also* 2 J. Cook, *Constitutional Rights of the Accused* § 7(3) (2d ed. 1986).

6. *See* page 6 of appellant's brief in *Palmer* on file at State Law Library.

ters expressly agreed with the majority that "this is not a constitutional matter * * *." 291 Minn. at 309, 191 N.W.2d at 192 (Otis, J., dissenting).

Subsequently, in *Prideaux v. State, Dept. of Public Safety*, 310 Minn. 405, 247 N.W.2d 385 (1976), the court took issue with *Palmer*, observing that the "civil" label should not be allowed to obscure the quasi-criminal consequences of revocation to the ordinary citizen and stating that "the decision whether to take or refuse chemical testing is arguably a 'critical stage' in the driving-under-the-influence proceeding." 310 Minn. at 411, 247 N.W.2d at 389. Nevertheless, the court expressly refrained from deciding the case on constitutional grounds and expressly declined to overrule *Palmer, Prideaux*, 310 Minn. at 414, 422, 247 N.W.2d at 391, 395; instead, the *Prideaux* court limited its decision to statutory grounds. In *Prideaux* it was held that Minn.Stat. § 481.10 gives a driver arrested for DWI a limited statutory right to consult counsel before deciding whether to submit to chemical testing.[7] The court declared, "The importance of a driver's license and the binding decisions which must be made by the driver asked to submit to chemical testing make the chemical-testing process a 'proceeding' within the meaning of section 481.10 before which consultation with counsel is to be accorded." 310 Minn. at 419, 247 N.W.2d at 393.[8]

Apparently in response to the court's explicit recognition that if the implied consent statute forbade a limited right to counsel before chemical testing, that statute, which is later and more specific in its scope, would control over the limited statutory right accorded by section 481.10, *id.*, the legislature signified its agreement with the holding in *Prideaux* by expanding the implied consent advisory to include a statement to the effect that the driver had a limited right to consult with an attorney. In 1984, however, the legislature amended the advisory by inserting a new warning that Minnesota law "requires" the person to submit to testing and by adding a statement that "after submitting to testing" the driver has a right to consult with an attorney (and to have additional tests made by someone of the person's own choosing).

The effect of the 1984 amendment was tested in *Nyflot v. Commissioner of Public Safety*, 369 N.W.2d 512 (Minn.1985), *appeal dismissed*, 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). The commissioner of public safety contended that, notwithstanding the dictum to the contrary in *Prideaux, Palmer* was still good law. In response Nyflot argued that the officer's invocation of the implied consent law to require a drunk driving arrestee to submit to chemical testing constituted a "critical stage" of the prosecution and, in effect, asked us to overrule *Palmer* and to recognize a constitutional right to counsel. This court fully considered this issue and all the other issues raised and held that "a driver arrested for DWI has *no right, statutory or constitutional*, to consult with counsel before deciding whether to submit to chemical testing." 369 N.W.2d at 513 (emphasis supplied). Noting that at the time *Prideaux* was decided, there was still some dispute about when a prosecution was commenced for purposes of attachment of the constitutional right to counsel, the court concluded that the constitutional right to counsel does not attach "until judicial pro-

---

7. Minn.Stat. § 481.10 provides in pertinent part: "All officers or persons having in their custody a person restrained of liberty upon any charge or cause alleged, * * * upon request of the person restrained, as soon as practicable, and before other proceedings shall be had, shall notify any attorney residing in the county of the request for a consultation with the attorney * * *."

8. In *Prideaux* the court added that in this context the statutory right to counsel would be considered vindicated "if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel." 310 Minn. at 421, 247 N.W.2d at 394.

Subsequently, in *State, Dept. of Public Safety v. Kneisl*, 312 Minn. 281, 251 N.W.2d 645 (1977), this court expanded upon this aspect of *Prideaux*, holding that the arrested person's limited statutory right to counsel in implied consent cases includes the right to a private conference with the attorney at the jail before he/she decides whether to submit to testing if the attorney, in response to the person's phone call, arrives at the jail in time to permit the administration of a valid test.

ceedings are formally commenced (by indictment, complaint or substitute for complaint)." 369 N.W.2d at 515–16.

It is my understanding that the majority's position here is that the state constitutional issues have not previously been decided, but the fact of the matter is that the court did consider all of the issues raised in *Nyflot* and did decide, *inter alia*, that implied consent testing before a person is formally charged does not constitute a "critical stage" of a "criminal prosecution" and did decline to overrule *Palmer*. Quite frankly, in my judgment, a fair reading of the opinion, the two special concurrences, and the dissent in *Nyflot* demands recognition that this court fully understood at that time that it was specifically holding under both federal and state constitutions that there was no constitutional right to consult counsel before deciding whether to submit to chemical testing under the implied consent law. Justice Scott, concurring specially, declared that only a constitutional restriction could override the legislative intention to preclude consultation with a lawyer until after the driver had submitted to testing. Because testing for blood alcohol is a matter of search and seizure and because "[t]here is no constitutional right to consult an attorney before a search is conducted," he concluded that the statute was constitutionally sound. 369 N.W.2d at 518–19. Justice Kelley, in his special concurrence, took the position that the driver's revocation action is civil in nature and that therefore Nyflot's arguments with respect to the right to counsel under both the state and federal constitutions and the constitutional discussion in both the majority and dissenting opinions were irrelevant because the constitutional right to counsel arises only in the event of criminal prosecution. 369 N.W.2d at 518–19. In his dissent Justice Yetka vigorously argued that chemical testing is a "critical stage" of a "criminal prosecution" which triggers one's right to counsel—that is, the precise argument rejected in *Nyflot* but adopted in today's majority decision—and asserted that if the driver does not have such a right under the federal constitution he does have such a right under the state constitution. 369 N.W.2d at 519–25. Under the circumstances, it seems to me that it defies logic to contend that the holding in *Nyflot* that "a driver arrested for DWI has no right, statutory or constitutional, to consult with counsel before deciding whether to submit to chemical testing" addressed only the existence of a right under the federal constitution.

Not only does the *Nyflot* decision constitute controlling authority in the present case, but that decision comports with recognized principles of constitutional law. The sixth amendment to the United States Constitution and the corresponding provision of the Minnesota Constitution provide defendants in "criminal prosecutions" certain *prosecution-related rights*, rights which are invoked by the commencement of judicial proceedings. The police, by arresting a person for drunk driving, do not commit the state to prosecuting that person for driving while intoxicated. At the time of the arrest the officer has no knowledge whether the arrestee will be prosecuted for DWI. Neither does the police officer or trooper have authority to institute a prosecution but only to report the results of the test "to the commissioner of public safety and the authority having a responsibility for prosecution of misdemeanor offenses for the jurisdiction in which the acts occurred." Minn.Stat. § 169.123, subd. 4 (1990); *see also* Minn. R.Crim.P. 4.02, subd. 3. The Minnesota Rules of Criminal Procedure provide that "the complaint, tab charge[9] and indictment

---

**9.** A tab charge is a time-saving alternative which in a typical case permits the prosecuting authority to commit the state to prosecute a person for misdemeanor offense without filing a complaint. Minn.R.Crim.P. 4.02, subd. 5(3) provides as follows:

If there is no complaint made and filed by the time of the defendant's first appearance in court as required by this rule for a misde-

meanor charge or a gross misdemeanor charge under Minn.Stat. § 169.121 or Minn. Stat. § 169.129, the clerk shall enter upon the records a brief statement of the offense charged including a citation of the statute, rule, regulation, ordinance or other provision of law which the defendant is alleged to have violated. *This brief statement shall be a sub-*

are the only accusatory pleadings by which a prosecution may be initiated and upon which it may be based." Comment to Minn.R.Crim.P. 2. Accordingly, it seems clear to me that the court correctly determined in *Nyflot* that no "criminal prosecution" had been commenced at the time the officer invoked the provisions of the implied consent law and gave Ms. Nyflot the advisory and that, therefore, neither the right to counsel provided by the United States Constitution nor the right to counsel contained in the corresponding provision of the Minnesota Constitution, was activated.

Moreover, as the court pointed out in *Nyflot*, the legislature has the authority to require, as it has done, a person suspected of driving while intoxicated to submit to the testing provided pursuant to the implied consent law. 369 N.W.2d 512. Implicit in the determination that "there being no right under the constitution to consult with counsel in this context, the decision whether or not to provide that right is one for the legislature to make," is recognition of the principle explicated in the Scott concurrence that testing for blood alcohol is a matter of search and seizure and that there is no constitutional right to consult a lawyer before a search is conducted. *Id.* Although the majority opinion in *Nyflot* did not address the question whether chemical testing for blood alcohol concentration was a "critical stage", the decision comports with Justice Brennan's declaration in *Gilbert v. California*, 388 U.S. 263, 267, 87 S.Ct. 1951, 1953, 18 L.Ed.2d 1178 (1967), that "putting aside the fact that the handwriting exemplars were taken before the indictment," the taking of the exemplars was not a "critical stage" entitling the defendant to assistance of counsel because there was "minimal risk that the absence of counsel might derogate from his right to a fair trial." Here, as in *Gilbert*, there is minimal risk that the absence of counsel at the time of testing will affect the arrestee's right to a fair trial because, as this court pointed out in *Nyflot*, an attorney may not ethically advise the driver not to take the test, which is required by law. 369 N.W.2d at 517 n. 3. "In short, what the attorney may tell the driver is what the implied consent advisory tells the driver." *Id.*

The majority's decision to reject *Nyflot* presents one of those questions by which we, as judges, "define" ourselves and our understanding of our unique role in this system of government by law: When, if ever, is it proper for a judge of this court to vote to overrule a major constitutional decision of this court? [10]

Dean Geoffrey R. Stone provides a persuasive analysis of this issue in *Precedent, The Amendment Process, and Evolution in Constitutional Doctrine*, 11 Harv.J. of L. & Pub.Pol. 67 (1988). Dean Stone rejects the two extreme positions, the position on the one hand that a court should never overrule a prior decision and the position on the other hand that every issue of constitutional law is a question of first impression. Stone then addresses the question by reference to the reasons for overruling a case and lists three reasons as worth discussing.

First is that the prior decision was "based on certain factual premises that have been proven incorrect" and that if the court in the prior case had known what the court now knows it would have reached a different result. *Id.* at 71. Inasmuch as no one has suggested that *Nyflot* rests on inaccurate factual premises, the first reason has no application here.

A second, related reason is that the prior decision "was premised on a state of affairs that has changed so much over time" that the court deciding the prior case would itself have reached a different result in the subsequent case in light of the new circumstances. *Id.* at 71. Neither has this second reason any application in this case:

*stitute for the complaint and is referred to as a tab charge in these rules.*
(Emphasis supplied).

**10.** Those decisions cited in footnote 6 of the majority opinion (maj. slip op. at 14) are, of course, inapposite to this question; while they represent the evolution of the common law governing civil actions, none of them overrules a major constitutional decision of this court.

(a) Nothing has happened on the legislative front that would prompt an overruler. Indeed, after our decision in *Nyflot*, the legislature amended the DWI law to make refusal to submit to testing a crime (a gross misdemeanor) if the person has certain prior license revocations, Minn.Stat. § 169.121, subds. 1(a), 3(c) (1989), an amendment the validity of which is decided today in *McDonnell v. Commissioner of Public Safety*, 473 N.W.2d 848 (Minn.1991) filed herewith.

(b) Neither has anything happened on the constitutional law front to suggest that this court's decision in *Nyflot* was erroneous—

(i) The United States Supreme Court dismissed Ms. Nyflot's appeal for want of a substantial federal question at 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). Justice White, joined by Justice Stevens, dissented from the dismissal, arguing that a substantial federal question, on which he did not express an opinion, was raised. Whereas a denial of certiorari says nothing about whether or not the United States Supreme Court agrees or disagrees with the decision below, a dismissal for want of a substantial federal question carries "the same practical consequences as summary affirmance" and "operates as an adjudication that the federal question was properly decided on the merits by the state court." 16 Wright, Miller, et al., *Federal Practice and Procedure* § 4014 (1977). I can only assume that our decision in *Nyflot* on the federal constitutional law issue comports with the thinking of the United States Supreme Court.

(ii) Nor, contrary to what the majority argues, has anything happened on the state constitutional law front to suggest that the *Nyflot* decision is wrong. The majority says that what has changed since *Nyflot* is "the development of state constitutional law." Maj. at 835. Interestingly, in notes 2 and 3 of its opinion the majority approvingly cites scores of decisions in which other states have interpreted their state constitutions more expansively than the United States Supreme Court has interpreted the federal constitution, *id.* at 830–831, but most of these decisions *preceded% Nyflot*. Indeed, contrary to the impression created by the majority opinion, the *overwhelming* majority of courts that have addressed the issue since *Nyflot* was decided have agreed with the *Nyflot* holding that there is neither a federal nor a state constitutional right to consult with counsel before deciding whether to submit to testing. *See, e.g., State v. Cichowski*, 203 Conn. 97, 523 A.2d 503 (1987) (relying on *Nyflot* in rejecting claim of right to counsel under federal constitution); *Brank v. State*, 528 A.2d 1185 (Del.1987) (relying on *Nyflot* in rejecting claim under federal constitution); *State v. Hoch*, 500 So.2d 597 (Fla.App.1986) (relying on *Nyflot* in rejecting claim under both federal constitution and state law), *pet. for rev. denied*, 509 So.2d 1118 (Fla.1987); *Commonwealth v. Brazelton*, 404 Mass. 783, 537 N.E.2d 142 (1989) (relying on *Nyflot* in rejecting claim under both federal and state constitutions); *State v. Greene*, 128 N.H. 317, 512 A.2d 429 (1986) (rejecting claim under both federal and state constitutions); *Commonwealth v. West*, 370 Pa.Super. 365, 536 A.2d 447 (1988) (rejecting claim under both federal and state constitutions); *In re Kean*, 520 A.2d 1271 (R.I.1987) (rejecting claim under both federal and state constitutions); *McCambridge v. State*, 725 S.W.2d 418 (Tex.App.1987) (relying on *Nyflot* in rejecting claim under both federal and state constitutions), *affirmed*, 778 S.W.2d 70 (Tex.Crim.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1936, 109 L.Ed.2d 299 (1990).

It seems to me that only the membership of this court has changed. Of the six justices in the majority in *Nyflot*, only two are presently members of the court and one of these has recused from participation in this case.[11] The recently appointed seventh justice, who has recused from participation

---

**11.** In an analogous situation involving a member of this court who found it necessary to recuse we declined, "out of courtesy" to that justice, to reexamine at that time a prior decision in which the justice had participated; in other words, we deferred reexamination until such time as the full court could address and decide the issue. *State v. Schwartz*, 447 N.W.2d 422, 429 n. 6 (Minn.1989).

here, was the author of the court of appeals' decision in this case holding that the Minnesota Constitution does not give a driver the right to consult with an attorney prior to deciding whether to submit to a chemical sobriety test, *Friedman v. Commissioner of Public Safety,* 455 N.W.2d 93 (Minn.App.1990). The two dissenting justices in *Nyflot* are still members of the court and they have been joined by another new justice. It is undoubtedly the view of these justices that *Nyflot* was wrong at the time it was decided, but is that a valid basis for overruling *Nyflot?* I think not. On this, the third basis for overruling a prior constitutional decision, Dean Stone offers the following critical analysis:

> [A] justice may conclude that a prior decision was simply "wrong" at the time it was decided. Had he been a justice at the time of the prior decision, he would have voted the opposite way. Now that he has found four other justices who share his view, he will overrule the "wrong" decision. This is the most problematic basis for overruling. Without the justification of either inaccurate factual premises or changed circumstances, the Justice in this situation is merely substituting his judgment for that of his predecessors. And although his predecessors may have no claim to greater interpretive authority than their successors, it is likewise true that the successors have no greater interpretive authority than their predecessors. Why, then, should the view of the successors prevail? Such a basis for overruling substitutes power for principle and generates

instability, unpredictability, politicization, and all the other dangers sought to be avoided by the doctrine of precedent.

G. Stone, *supra,* at 72–73.

It is no doubt true, as the majority asserts, that this state is free to give drunk drivers the right to consult with counsel before deciding whether to fulfill their statutory obligation to comply with the implied consent law. But that does not mean that this *court* is free to do so. The court is not the state nor do its members constitute a continuing constitutional convention with a "roving commission" to substitute its will for the will of the people as expressed in the words of the state constitution. We are an interpretive body, free to interpret and apply the state constitution but not free, as one commentator has put it, to take the constitution out of constitutional law.[12] Heretofore, this court has wisely rejected the majority's result-oriented approach and has sought to anchor itself in a principled way to the text of the Minnesota Constitution itself, distinguishing those provisions which are identical to provisions of the federal constitution from those provisions which, by their different wording, expressly afford greater protection to the people of Minnesota.[13] In this case, however, we are dealing with textually identical provisions.

Neither does contemporaneous history provide a legitimate neutral ground for interpreting article I, § 6 of the Minnesota Constitution more broadly than the sixth amendment to the United States Constitu-

---

**12.** C. Wolfe, *How the Constitution Was Taken Out of Constitutional Law,* 10 Harv.J. of L. & Pub.Pol. 597 (1987).

**13.** *Compare State v. Fuller,* 374 N.W.2d 722, 726–27 (Minn.1985), in which we said that while it is "axiomatic" that we may interpret our state constitution to offer greater protection of individual rights than the federal constitution, that "does not mean that we will or should cavalierly construe our constitution more expansively than the United States Supreme Court has construed the federal constitution. Indeed, a decision of the United States Supreme Court interpreting a comparable provision of the federal constitution that, as here, is textually identical to a provision of our constitution, is of inherently persuasive, although not necessarily compel-

ling, force." *and State v. Murphy,* 380 N.W.2d 766, 769–70 n. 2 (Minn.1986) (interpreting provisions of Minnesota Constitution dealing with self-incrimination and right to counsel the same way the United States Supreme Court had interpreted it in identical language in fifth and sixth amendments of federal constitution) *with State v. Hershberger,* 462 N.W.2d 393 (Minn.1990) (interpreting provision of state constitution precluding interference with religious freedom as providing individuals with greater protection than that provided by the first amendment to federal constitution). *See also* M. Solimine & J. Walker, *State Court Protection of Federal Constitutional Rights,* 12 Harv.J. of L. & Pub.Pol. 127, 152 (1989).

tion. S. Twist & L. Munsil, *The Double Threat of Judicial Activism: Inventing New "Rights" in State Constitutions,* 21 Ariz.St.Law J., 1005, 1031 (1989). The majority's evidence that "history" supports its decision consists in large measure of generalities such as that "[t]he right to counsel is a long-established principle in the nation," maj. at 829, a statement with which no one disagrees but which helps not at all in answering the question of *when* the right to counsel attaches. The majority also assigns considerable importance to the fact that early on the legislature enacted what is now Minn.Stat. § 481.10, which requires an officer having a suspect in custody to allow the suspect to meet with counsel upon request "before other proceedings shall be had." *Id.* at 830. But I am not aware that anyone has ever contended that this statute had the effect of putting a gloss on the right to counsel contained in the Minnesota Constitution—that the statutory reference to "other proceedings" was the equivalent of the constitutional reference to "criminal prosecution." *See, e.g., Palmer,* 291 Minn. at 309, 191 N.W.2d at 192 (Otis, J., dissenting). In my opinion, then, history and precedent support the conclusion that our decisions in *Palmer* and *Nyflot* comport with the intent of the drafters with respect to the timing of the attachment of the right to counsel pursuant to the state constitution.

Moreover, if the dicta in *Prideaux* can be said to have posited the equivalency of the statutory "proceedings" and the "constitutional criminal prosecution," the error of that assumption was corrected in *Nyflot.* To say now, as does the majority, that the constitutional right to counsel attaches under the Minnesota Constitution at the time of the arrest for drunken driving requires either overruler of *Nyflot* or a very different definition of the term "criminal proceeding" as it is used in the United States Constitution from the identical provision of the Minnesota Constitution. In either case the perils of the expansionist course on which the majority has today embarked (well illustrated by the string of citations appearing in note 2 of the majority opinion) suggests that very shortly the court will find itself in the position of the sorcerer's apprentice.

Finally, the majority refuses to recognize that it is according a drunk driving arrestee *special treatment* accorded no other criminal arrestee who is required to submit to a search. The majority justifies its position by declaring that it is "more than just a search" to require a person to submit to a breath test because the act of giving a breath sample "could produce the evidence leading to conviction before any trial is even necessary." Maj. at 837. Obviously, the majority cannot mean that the evidence leads to "conviction before any trial is even necessary." What the majority must mean is that the evidence seized, *i.e.,* the breath sample, is so incriminating that it is pointless for the defendant to insist on his or her right to trial. But, of course, the same can be said of many other types of evidence discovered and seized during lawful searches conducted in the investigation of other crimes. For example, if police arrest a murder suspect moments after the commission of the offense and swab the suspect's hands with a chemical substance in order to determine if the suspect recently fired a gun, no one would be heard to argue that the police had to let the defendant speak with counsel first because the test is "more than just a search" and the results of the test "could produce the evidence leading to conviction before any trial is even necessary." *See* 2 W. LaFave, *Search and Seizure* § 5.3(c), at n. 99 (2d ed. 1987). Similarly, if police arrest a suspect moments after a rape is committed and seize the suspect's underwear in order to subject the underwear to tests for the presence of semen and sperm, no one would be heard to argue that the police had to let the defendant speak with counsel first because the search resulting in the seizure of the underwear is "more than just a search" and the results of the testing of the underwear "could produce the evidence leading to conviction before any trial is even necessary."

The issue is not whether anyone should be denied the right to counsel but when that right attaches and to what stages of a

criminal prosecution the right applies. Under a long line of decisions of both the United States Supreme Court and this court, the right to counsel attaches only to "critical stages" of a "criminal prosecution." [14] Although persons arrested for murder, rape, arson, and other heinous crimes have a *Miranda* right to counsel when subjected to custodial interrogation, they do not have a sixth amendment right to counsel before deciding whether to submit to a search. What the majority has done, therefore, is to hold that under the Minnesota Constitution a drunk driving arrestee is entitled to special treatment, treatment that is not and has never been accorded by either the United States Constitution or the Minnesota Constitution to persons arrested for other kinds of offenses.

KEITH, Chief Justice (dissenting).

I concur in the dissent of Justice Coyne. The majority's holding represents a dramatic departure from this court's and the federal courts' right to counsel precedent involving DWI and other offenses, and Justice Coyne has articulated well the special treatment the majority accords to DWI suspects. I write separately to emphasize my concern about an anomaly created by the majority's holding today. The majority provides for attachment of the right to counsel at the time of arrest for misdemeanor and DWI offenders, whereas under our established caselaw, felony and other gross misdemeanor offenders are not able to invoke their right to counsel until they appear in court for the first time.

The majority discards a workable, sensible, and bright-line test for the attachment of the right to counsel derived from a nearly identical clause of the federal Constitution. The United States Supreme Court has recognized that the sixth amendment right to counsel attaches at critical stages of the prosecution *and* "only at or after the initiation of adversary *judicial* proceedings

against the defendant." *United States v. Gouveia*, 467 U.S. 180, 187–89, 104 S.Ct. 2292, 2296–98, 81 L.Ed.2d 146 (1984) (emphasis added). The majority departs from the federal "commencement of adversary *judicial* proceedings" requirement and instead emphasizes that, if the offense may be tab-charged under the Minnesota Rules of Criminal Procedure, the criminal prosecution commences when the police arrest the suspect. In addition to muddying this court's state constitutional law and criminal procedure jurisprudence, the majority misconstrues the tab-charging procedure and creates an unjustified distinction between attachment of the right to counsel in misdemeanor and DWI cases and in felony and other gross misdemeanor cases.

I agree with Justice Coyne that the *Nyflot* court correctly determined that the criminal prosecution has not commenced at the time the officer reads the implied consent advisory. The DWI prosecution does not commence until the suspect appears in court and agrees to the tab-charging procedure, i.e., the in-court reading of a brief statement of the offense as a substitute for the complaint, or, if the defendant demands a complaint, until the complaint is issued. Minn.R.Crim.P. 4.02, subd. 5(3). The flaw in the majority's reasoning occurs in its statement that "[t]he ticket or tab charge is the functional equivalent of a complaint." The tab charge is a substitute for a complaint in misdemeanor and gross misdemeanor DWI cases; the issuance of the ticket alongside the highway is not.

To the extent the majority places significance on its view that DWI proceedings are formally commenced upon the issuance of the ticket at the roadside, the majority creates contradictory rules for when the right to counsel attaches in felony and gross misdemeanor cases in contrast to misdemeanor and DWI cases. The state may initiate a prosecution by tab charge for misdemeanor offenses and for gross misdemeanor DWI offenses. Minn.R.Crim.P.

---

**14.** The majority argues that "We have held that a 'ticket or tab charge' is the functional equivalent of a complaint in a DWI setting, but our holding does not go beyond that." Maj. at 837. This, however, ignores the fact that ticketing

(that is, arresting) a person for DWI does not constitute the filing of the tab charge, thereby formally initiating a prosecution. *See* discussion at pages 842–843 as well as at footnote 9 of this dissent. Dissent at 842–843.

17.01. If ticketing a suspect for an offense that may be tab-charged triggers the attachment of the right to counsel under Minn. Const. art. 1, § 6, misdemeanor offenders and DWI offenders benefit from the right to counsel from the point of arrest. At the same time, defendants who are arrested for the most serious crimes do not have the right to counsel until they appear in court. I do not believe the federal or the Minnesota constitutions require this result. For this reason and the reasons stated in Justice Coyne's opinion, I dissent.