**STATE of Minnesota, Respondent,**

v.

**William Henry WEBSTER, Appellant,**

**Michael Robert McCoy, Appellant.**

**Nos. C4–01–1375, C9–01–1422.**

Court of Appeals of Minnesota.

April 23, 2002.

William J. Hennessy, Cook County Attorney, Michael J. Boese, Assistant County Attorney, Grand Marais, for respondent.

James W. Weisberg, Grand Marais, for appellants.

Considered and decided by
TOUSSAINT, Presiding Judge,
LANSING, Judge, and PORITSKY,
Judge.*

## OPINION

LANSING, Judge.

In consolidated appeals from gross misdemeanor convictions of driving while impaired, William Webster and Michael McCoy challenge the admissibility of Intoxilyzer test results. The district court's evidentiary rulings did not violate either driver's limited right to counsel under the Minnesota constitution, and we affirm.

## FACTS

A Cook County Deputy arrested Michael McCoy for driving while impaired (DWI) on January 7, 2001. The same deputy arrested William Webster for DWI on February 16, 2001.

For purposes of this appeal, the underlying facts in the two cases are essentially the same. The deputy observed unlawful driving conduct, requested that the driver take a preliminary breath test, transported the driver to the law enforcement center, and read the implied consent advisory. Each driver agreed to take an Intoxilyzer test which produced a test result over .20. Before the hearing, each driver moved to suppress the Intoxilyzer-test results as a violation of his right to counsel, and the district court denied the motion. Each waived the right to a jury trial and submitted the case to the district court on stipulated facts, consistent with the procedures outlined in *State v. Lothenbach*, 296 N.W.2d 854 (Minn.1980). The court found both drivers guilty of gross misdemeanor DWI.

The facts underlying the two cases diverge on the drivers' responses to the implied consent advisory. When the deputy asked McCoy if he understood the advisory, McCoy responded "Yes, I do." The deputy asked McCoy if he wished to consult an attorney. McCoy responded, "No." When the deputy asked McCoy if he would take a breath test, McCoy responded, "I already have." The deputy replied, "That's a preliminary breath test. What I want you to take is a breath test using an Intoxilyzer evidentiary test." McCoy responded, "Oh, I will." The deputy said,

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

"I'll ask you again, will you take a breath test?" McCoy said, "Yes."

When the deputy read the implied consent advisory to Webster, he responded, "I don't understand." The deputy read the implied consent a second time. After the second reading, the deputy asked Webster if he understood, and Webster replied that he did. He also said that he wished to consult with an attorney.

The deputy provided Webster with a telephone and a directory and opened the directory to the section for attorneys. At that point, Webster became belligerent and threatened the deputy. The deputy said, "Let me know when you're done using the phone, okay?" Webster responded, "Done." Webster had made no calls. The deputy asked, "Are you sure?" Despite making no calls, Webster responded, "Yup." The deputy asked, "Will you take the breath test?" Webster said, "I took it already." The deputy explained that he had taken a preliminary breath test that established probable cause, but the test he was now being asked to take was an evidentiary test that would be submitted in court. Webster responded, "Okay." The deputy asked him again if he would take the breath test and Webster said, "Yes, I will."

McCoy did not testify at the suppression hearing. Webster testified that he was confused by the implied consent advisory because he believed he had already taken a breath test. He acknowledged that the deputy explained the difference between the preliminary breath test and the Intoxilyzer test before he agreed to take the Intoxilyzer test.

On appeal both McCoy and Webster contend that the district court's ruling that the Intoxilyzer test was admissible violated their federal constitutional rights because their confusion over the preliminary breath test and the Intoxilyzer test result-ed in an unknowing and unintelligent waiver of their right to speak with an attorney.

## ISSUE

Does the limited state constitutional right to consult an attorney before deciding whether to submit to chemical testing impose Sixth Amendment waiver procedures?

## ANALYSIS

Webster and McCoy contend that the Intoxilyzer test was inadmissible because the test was obtained in violation of their Sixth Amendment right to counsel. This argument misapprehends the nature of Minnesota's limited right to consult with an attorney before deciding whether to submit to a chemical test.

Minnesota's recognition of a driver's right to consult with an attorney before deciding whether to take an alcohol-concentration test has evolved over time. In *State v. Palmer*, 291 Minn. 302, 305–07, 191 N.W.2d 188, 190–91 (1971), a divided Minnesota Supreme Court expressly rejected the argument that a driver has a right under the Sixth Amendment and the corresponding provision of the Minnesota Constitution to consult with an attorney before deciding whether to provide a breath sample. *Id.*

The supreme court revisited the issue in *Prideaux v. State, Dep't of Pub. Safety,* 310 Minn. 405, 411, 247 N.W.2d 385, 389 (1976), considering whether the decision to refuse chemical testing constitutes a critical stage in a criminal proceeding. The court expressly declined to overrule *Palmer* but, relying on Minn.Stat. § 481.10 (1976), held that a driver had a statutory right to consult counsel before deciding whether to submit to chemical testing. 310 Minn. at 415–18, 247 N.W.2d at 391–93. The legislature incorporated the *Prideaux* holding into the mandatory implied consent advisory but, in 1984, amended the

advisory to state that "after submitting to testing" the driver has a right to consult with an attorney. Minn.Stat. § 169.123, subd. 2(b)(4) (1986).

The effect of this statutory change was tested in *Nyflot v. Comm'r of Public Safety,* 369 N.W.2d 512 (Minn.1985), *appeal dismissed,* 474 U.S. 1027, 106 S.Ct. 586, 88 L.Ed.2d 567 (1985). A divided court decided that "a driver arrested for DWI has no right, statutory or constitutional, to consult with counsel before deciding whether to submit to chemical testing." 369 N.W.2d at 513.

The court again revisited the issue six years later in *Friedman v. Comm'r of Pub. Safety,* 473 N.W.2d 828 (Minn.1991). The court, again divided, identified a right to counsel independently guaranteed by article I, section 6 of the Minnesota Constitution which attaches at the time an individual is requested to undergo blood alcohol testing. *Id.* at 833–34. In *Friedman* the court established the right only under the Minnesota Constitution but used a federal critical stage analysis. *Friedman,* 473 N.W.2d at 833; *see* John E. Simonett, *An Introduction to Essays on the Minnesota Constitution,* 20 Wm. Mitchell L.Rev. 227 (1994).

▮▮▮▮ Thus, the cases that establish a driver's limited right to consult with an attorney before deciding whether to submit to a chemical test in Minnesota derive that right from article I, section 6 of the Minnesota Constitution, not the Sixth Amendment to the United States Constitution. Generally, the right to legal representation under the federal and state constitutions attaches only at or after a formal charge, preliminary hearing, indictment, information, or arraignment. *U.S. v. Gouveia,* 467 U.S. 180, 187–89, 104 S.Ct. 2292, 2297–98, 81 L.Ed.2d 146 (1984) (Sixth Amendment right to counsel attaches only "at or after the initiation of adversary judicial proceedings against the defendant" (citation omitted)); *State v. Willis,* 559 N.W.2d 693, 697 (Minn.1997) (both United States and Minnesota constitutions guarantee right of legal representation that attaches in a criminal proceeding when the state initiates adversary judicial proceeding). The use of "critical stage" methodology in *Friedman* relies on federal concepts, but does not alter the source of the right. *See McDonnell v. Comm'r of Pub. Safety,* 473 N.W.2d 848, 853 (Minn.1991). ("Without question the right to counsel guaranteed by the Sixth Amendment * * * does not attach until formal charges are initiated.")

▮▮▮▮ In their claim that the state is required to demonstrate waiver of an attorney consistent with Sixth Amendment principles as a basis for Intoxilyzer test admissibility, Webster and McCoy mistakenly equate the limited right to counsel with a *"Miranda"* right, which a suspect who is in custody, but has not been formally charged, may assert before being interrogated. *Miranda v. Arizona,* 384 U.S. 436, 471–72, 86 S.Ct. 1602, 1626–27, 16 L.Ed.2d 694 (1966). The court-created *Miranda* right to counsel is specifically designed to protect the Fifth Amendment right against self-incrimination; it is not derived from the Sixth Amendment. Webster and McCoy could not assert a *Miranda* right to prevent introduction of the evidence because *Miranda* applies to testimonial evidence and does not apply to questions intended to determine whether the driver will submit to an evidentiary test. *South Dakota v. Neville,* 459 U.S. 553, 564 n. 15, 103 S.Ct. 916, 923 n. 15, 74 L.Ed.2d 748 (1983); *McDonnell,* 473 N.W.2d at 855 (*Miranda* warning not mandated in request for breath test because request does not constitute interrogation).

▮▮▮▮ When the supreme court in *Friedman* recognized a state constitutional right

of representation that attaches at the time an individual is requested to undergo chemical testing, it provided a procedure, commensurate with the limited right, to satisfy the state constitutional requirement of legal representation: the person must be informed of the right, and the police must assist in its vindication by providing a telephone and a reasonable time to contact and talk with counsel. *Friedman,* 473 N.W.2d at 835.

The transcripts of the deputy's conversations with Webster and McCoy support the district court's finding that the Cook County Deputy fully assisted in vindicating Webster's and McCoy's limited right to counsel. Although both maintain that they were confused by the advisory because they did not understand the relationship between the preliminary breath test and the Intoxilyzer test, the record does not reasonably support a claim of confusion. McCoy did not testify and thus provided no testimonial basis for any confusion. Furthermore, the transcript establishes that the deputy explained the difference between the two tests. Webster testified that he was initially confused, but acknowledged that the deputy explained the difference between the two tests. In any event, Webster invoked his right to an attorney; thus any confusion could not possibly have affected his right to counsel.

### DECISION

Webster's and McCoy's limited right to contact and consult with counsel under the Minnesota Constitution, Minn. Const. art. I, § 6, was vindicated, and we affirm both convictions for gross misdemeanor driving while impaired.

**Affirmed.**