Donald Peter MAIETTA, Petitioner, Appellant,

v.

COMMISSIONER OF PUBLIC SAFETY, Respondent.

No. C2–02–2261.

Court of Appeals of Minnesota.

June 24, 2003.

Andrew S. Birrell, R. Travis Snider, Birrell & Newmark, Ltd., Minneapolis, for appellant.

Mike Hatch, Attorney General, Jeffrey F. Lebowski, David L. Ramp, Assistant Attorneys General, St. Paul, for respondent.

Considered and decided by RANDALL, Presiding Judge, KALITOWSKI, Judge, and SCHUMACHER, Judge.

## OPINION

KALITOWSKI, Judge.

Appellant Donald Peter Maietta challenges the decision by the district court sustaining the revocation of appellant's driver's license, arguing that (1) his refusal to submit to testing was reasonable; and (2) he was denied his right to effective assistance of counsel.

## FACTS

The parties stipulated to the following facts: Appellant was arrested on April 26, 2002, for DWI, and an officer read appellant the implied consent advisory. The completed implied consent advisory stated that appellant understood that refusal to take a test was a crime. Appellant then told the officer that he wanted to speak to an attorney. After speaking to the attorney, appellant refused to submit to testing and gave as his reason the advice of his attorney. Appellant expressed confusion and no further conversation occurred between appellant and the officer. Appellant was deemed to have refused testing.

Based on these limited facts, the district court sustained the revocation of appellant's driver's license.

## ISSUES

1. Was appellant's refusal to submit to testing in this case reasonable?

2. Was appellant denied the right to effective assistance of counsel when appellant refused to submit to testing based on the advice of the attorney?

## ANALYSIS

### I.

At the time an officer requests that an individual take a chemical test to determine the presence of alcohol or controlled substances, the person must be in-

formed that refusal to take a test is a crime. Minn.Stat. § 169A.51, subd. 2(2) (2002). If a person refuses to permit a test, then a test must not be given. Minn. Stat. § 169A.52, subd. 1 (2002). Under the implied-consent statute, it is an affirmative defense for appellant to prove that his refusal to permit the test was based on reasonable grounds. Minn.Stat. § 169A.53, subd. 3(c) (2002). Whether a refusal is reasonable is generally characterized as a question of fact for the district court that will be reversed only if clearly erroneous. *State, Dep't of Highways v. Beckey*, 291 Minn. 483, 486–87, 192 N.W.2d 441, 444–45 (1971). But where there is no dispute as to facts, the legal significance of the facts may be a question of law. *See Berge v. Comm'r of Pub. Safety*, 374 N.W.2d 730, 732 (Minn.1985). We overturn conclusions of law "only upon a determination that the trial court has erroneously construed and applied the law to the facts of the case." *Dehn v. Comm'r of Pub. Safety*, 394 N.W.2d 272, 273 (Minn. App.1986) (citation omitted).

Appellant contends that his refusal to take the test was reasonable. He argues that the supreme court has held that refusal to take the test on the advice of counsel is a reasonable refusal that excuses the driver from license revocation where an officer "made no attempt to explain to a confused driver that regardless of what his lawyer said, he must permit testing or lose his license." *State, Dep't of Pub. Safety v. Lauzon*, 302 Minn. 276, 277, 224 N.W.2d 156, 157 (1974). Based on this language from *Lauzon* and the stipulated facts, appellant argues that his refusal was reasonable because he was confused, and the police officer did not attempt to clear up his confusion. We disagree.

■ First, we note that the complete holding in *Lauzon* is that for a refusal to be reasonable based on the advice of counsel,

> it would have to appear that the police misled the driver into believing that somehow a refusal of this sort was reasonable or that police made no attempt to explain to a confused driver that regardless of what his lawyer said, he must permit testing or lose his license.

*Id.* It is not disputed that a police officer may not mislead a driver into believing that refusal to submit to testing based on the advise of counsel is reasonable. *See, e.g., McDonnell v. Comm'r of Pub. Safety*, 473 N.W.2d 848, 854 (Minn.1991) (noting that the court takes notice of whether drivers were actively misled by police regarding their statutory obligation to undergo testing). But here appellant is not claiming that an officer misled him. Nor is appellant contending that the officer refused to answer any of his questions. Rather, appellant relies on *Lauzon* to argue that the officer had an independent duty to clear up appellant's confusion and failed to do so. We disagree.

■ Decisions since *Lauzon* indicate that it is the responsibility of the attorney, not a police officer, to clear up any confusion on the part of a driver concerning the legal ramifications of test refusal. And *Lauzon* was decided before the Minnesota Supreme Court's decision in *Friedman v. Comm'r of Pub. Safety*, 473 N.W.2d 828 (Minn.1991). In *Friedman*, the driver was arrested by a Minneapolis police officer for DWI, but the driver was not allowed to talk to an attorney about her rights before submitting to an Intoxilyzer test. *Id.* at 829. The driver was read the implied consent advisory, and after she told the officer that she did not understand the advisory, the officer took that response as a refusal to be tested. *Id.* Prior to *Friedman*, the right to counsel did not attach at the chemical testing stage. But in *Fried-*

*man,* the supreme court held that a driver's right to counsel is triggered under Article I, Section 6, of the Minnesota Constitution when a driver is stopped for a possible DWI violation and asked to submit to a chemical test. *Id.* at 833–34. The court concluded that the right to counsel is critical at this stage because in these situations, drivers often look to the police for guidance to clear up confusion. *Id.* at 833. But the court noted that an attorney, not a police officer, is the appropriate source of legal advice to clear up confusion because an attorney functions as an objective advisor who could explain the alternative choices to the confused driver. *Id.*

In addition, in *Fehler v. Comm'r of Pub. Safety,* 591 N.W.2d 752, 754 (Minn.App. 1999), this court noted that an accurate assessment of the precise consequences of alcohol-concentration test refusal involves a degree of legal analysis that is the domain of the attorney and is beyond the scope of the law enforcement officer's function. And in *Haug v. Comm'r of Pub. Safety,* 473 N.W.2d 900, 901 (Minn.App. 1991), a driver refused testing based on the advice of counsel. This court concluded that the refusal was not reasonable because an attorney is the appropriate source of legal advice and while the fact that the driver received bad advice from his attorney was unfortunate, it did not excuse a refusal to submit to testing. *Id.* at 902. Moreover, post-Friedman statutory changes have specifically delineated the obligations of a police officer concerning informing a driver of his rights. *See* Minn. Stat. § 169A.51, subd. 2.

■ It is the responsibility of attorneys to answer questions, give advice, and attempt to clear up their client's confusion. Once a person has exercised his or her limited right to consult with an attorney before testing it is not the responsibility of a police officer to question or second-guess the advice given by the attorney. Thus, we conclude that the police officer here did not have a duty to advise appellant regarding his alleged confusion.

■ But even if, based on *Lauzon,* there can be such a duty in some cases, we conclude that the district court did not err in finding that on these facts it was not reasonable for appellant to refuse to submit to testing. Under *Lauzon,* appellant has the burden of showing that he was confused with respect to his rights or the consequences of his decision not to submit to testing when he refused testing. *See State v. Webster,* 642 N.W.2d 488, 492 (Minn.App.2002) (noting that the record did not reasonably support claims that the parties were confused by the advisory about the relationship between the preliminary breath test and the Intoxilyzer test). But appellant did not testify at the revocation hearing. Moreover, the completed implied consent advisory, which the parties agreed was part of the record before the district court, indicates that appellant was not confused about his rights. *See Gunderson v. Comm'r of Pub. Safety,* 351 N.W.2d 6, 7 (Minn.1984) (noting that driver did not testify and there was no other evidence to support driver's claim of confusion as to his obligation to submit to another test when the breath test machine malfunctioned). Thus, while the stipulated facts stated that appellant was confused, there was no evidence before the district court indicating the specific source of appellant's confusion. And we note that it is not unusual that a driver who is arrested for DWI may be in a state of confusion about a number of things. Importantly, *Lauzon* does not impose an affirmative duty on the part of the police officer to clear up any and all confusion on the part of a driver. Given the limited stipulated facts that the parties presented to the district court, we cannot conclude that the

district court erred in finding that there was no evidence that appellant "was confused with respect to his rights or the consequences of his decision not to submit to testing * * *."

## II.

An ineffective assistance of counsel claim is an alleged violation of the right to reasonably effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution. *State v. Rhodes,* 657 N.W.2d 823, 842 (Minn.2003). Appellant argues that he was denied his right to effective assistance of counsel because the attorney advised him to refuse testing, which is a crime.

Whether a claim of ineffective assistance of counsel may be brought in an implied consent revocation proceeding is an issue of first impression in Minnesota. But in *State v. Clark,* 164 Vt. 626, 671 A.2d 1276 (1995), the Vermont Supreme Court noted that the nature of a license-suspension proceeding is civil, not criminal. *Id.* at 1277. The court then held that a claim of ineffective assistance of counsel may not be advanced in a license-suspension proceeding because the constitutional protections available in criminal proceedings did not attach to such a civil proceeding. *Id.*

As in Vermont, implied consent revocation proceedings in Minnesota have been held to be civil in nature. *See, e.g., State, Dep't of Highways v. Normandin,* 284 Minn. 24, 26, 169 N.W.2d 222, 224 (1969); *Szczech v. Comm'r of Pub. Safety,* 343 N.W.2d 305, 306 (Minn.App.1984). And generally, the right to legal representation under the federal and state constitutions attaches only at or after a formal charge, preliminary hearing, indictment, information, or arraignment. *U.S. v. Gouveia,* 467 U.S. 180, 187–89, 104 S.Ct.

2292, 2297–98, 81 L.Ed.2d 146 (1984) (Sixth Amendment right to counsel attaches only "at or after the initiation of adversary judicial proceedings against the defendant"); *State v. Willis,* 559 N.W.2d 693, 697 (Minn.1997) (both United States and Minnesota constitutions guarantee right of legal representation that attaches in a criminal proceeding when the state initiates adversary judicial proceeding); *see also McDonnell,* 473 N.W.2d at 853 ("Without question, the right to counsel guaranteed by the sixth amendment * * * does not attach until formal charges are initiated.").

While the supreme court in *Friedman* recognized that the request of testing is a "critical stage" of the DWI proceeding, giving the driver a right to counsel, "that holding does not make the implied consent proceeding 'criminal' in nature * * *." *Davis v. Comm'r of Pub. Safety,* 509 N.W.2d 380, 392 (Minn.App. 1993), *aff'd,* 517 N.W.2d 901, 905 (Minn. 1994). The issue in this implied consent proceeding is whether a driver refused to submit to chemical testing, which is decided by a preponderance of the evidence standard. *Eckstein v. Comm'r of Pub. Safety,* 471 N.W.2d 114, 116 (Minn.App. 1991), *review denied* (Minn. Aug. 1, 1991). If the court finds that the driver refused testing, the driver's license revocation is upheld. Minn.Stat. § 169A.52, subd. 3. In no case does incarceration result from these proceedings. "While the act of test refusal is itself a crime, it must be prosecuted in a *separate* action." *State v. Dumas,* 587 N.W.2d 299, 303 (Minn.App.1998) (emphasis in original). Therefore, given the civil nature of the implied consent proceeding, appellant may not bring a claim of ineffective assistance of counsel.

Finally, even if we were to conclude that an ineffective assistance of counsel claim could properly be brought in

an implied consent revocation proceeding, appellant's claim fails on the merits. The United States Supreme Court has articulated a two-prong test to determine whether a party should be granted a new trial because of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A party must affirmatively prove both prongs. *Id.* To prevail on such a claim, an appellant must demonstrate that counsel's performance "fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors." *State v. Lahue*, 585 N.W.2d 785, 789 (Minn.1998) (citations omitted). A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Appellant bases his claim entirely on the ground that his attorney advised him to refuse to take a test. But appellant concedes that there may be circumstances where it would be in a driver's best interests to refuse testing. Therefore, the attorney's advice here may have been reasonable given the particular situation appellant was in. And while, as appellant argues, advising a driver to refuse testing violates an attorney's rules of professional conduct, appellant cites no authority for the proposition that giving advice that violates the rules of professional conduct is per se ineffective assistance that falls below the standards established in *Strickland*.

## DECISION

The district court properly sustained the revocation of appellant's driver's license because the stipulated facts did not establish that appellant's refusal to submit to testing was reasonable. Because an implied consent revocation proceeding is civil in nature, a claim of ineffective assistance

of counsel may not be advanced in such a proceeding.

**Affirmed.**

RANDALL, Judge (dissenting).

I respectfully dissent. The supreme court's reasoning in *State, Dep't of Pub. Safety v. Lauzon*, 302 Minn. 276, 224 N.W.2d 156 (1974) is persuasive. I recognize the majority's argument that *Lauzon* is a 1974 case, and I recognize that in the last 29 years there has been an expansion of DUI and implied consent cases (and their interpretation), and their progeny, perhaps in a volume equaling the stars in the heaven on a clear summer night. But notwithstanding that, I suggest the Minnesota Supreme Court would have to either overrule *Lauzon* or so narrow the facts that this case would not come under its umbrella. I do not see that either has been done.

In *Lauzon*, the court held that the driver's refusal to submit to testing was not reasonable, on the theory that the driver was following the advice of counsel, where

the police clearly informed defendant, *both before and after he talked with counsel*, that if he did not permit chemical testing, he would lose his driver's license.

*Lauzon*, 302 Minn. at 277, 224 N.W.2d at 157 (emphasis added). The court went on to state that once appellant expressed confusion, an officer must "attempt to explain to a confused driver that regardless of what his lawyer said, he must permit testing or lose his license." *Id.* This language indicates that confusion, after being told by your attorney not to take the test, is not a reasonable reason to refuse the test *unless* (a) *you express confusion to law enforcement,* and (b) *they did nothing to clear up your confusion. Id.* (emphasis added).

The same reasoning was noted in *Thurman v. Comm'r of Pub. Safety,* No. C1–96–1107, 1996 WL 745323 (Minn.App. Dec.31, 1996) (unpublished opinion). In *Thurman,* the appellant appealed the district court's order sustaining the revocation of his driver's license pursuant to the implied consent law. The appellant argued his refusal to submit to chemical testing was reasonable because the officer made no attempt to clear up his confusion regarding his testing obligations and because the officer failed to inform him that despite the advice of counsel, he was obligated to take a test at the chemical testing unit or lose his license. The court recognized that a driver's claim that a refusal was reasonable because he was merely following the advice of counsel

> will succeed *only* if the police misled a driver to believe the refusal was reasonable or *if police made no attempt to explain to a confused driver* that regardless of what his lawyer said, he must permit testing or lose his license.

*Id.* at *2 (emphasis added)

Here, the officer's duty to explain arose after appellant talked with counsel and expressed confusion. Counsel for the parties *stipulated* to the following facts:

1. Petitioner was arrested on April 26, 2002.

2. The police read Petitioner the Implied Consent Advisory beginning at about 12:24 a.m.

3. Petitioner told the Police Officer he wished to speak to a Lawyer.

4. Petitioner then called a friend who in turn called Attorney Paul Rogosheske.

5. Attorney Rogosheske then telephoned the police station where Petitioner was being detained and spoke with Petitioner.

6. Attorney Rogosheske advised Petitioner to refuse testing.

7. Petitioner then told the Police Officer who had invoked the Implied Consent that he had been advised to refuse testing by Attorney Rogosheske. Exhibit B is the Implied Consent Advisory and is received in evidence.

8. Petitioner expressed confusion.

9. There was no further conversation.

10. The Petitioner was deemed to have refused testing at 12:52 a.m.

The stipulation specifically states in item number 8 that appellant expressed confusion following his conversation with an attorney. Item number 9 means the officer made no attempt to clear up that confusion. The record shows the officer did not talk to appellant any more, but instead, completed the implied consent advisory.

I specifically disagree with that part of the majority's decision, which states that even if the cited language in *Lauzon* created a duty to clear up confusion in some cases, the district court can be affirmed because appellant has the burden of showing that he was confused with respect to rights or consequences and did not bear that burden. The majority states in pertinent part:

> But appellant did not testify at the revocation hearing, and the completed implied consent advisory indicates that appellant was not confused about his rights.

First, appellant did "testify" because the stipulation agreed to by the parties is evidence that the court must receive and the court must then assign a value to it. Secondly, the completed implied consent advisory, taken well before the stipulation and the court hearing, has no value because item number 8 of the stipulation super-

sedes it, trumps it, and it cannot be used to impeach the later stipulation.

Even respondent concedes that a stipulation between attorneys is a stipulation and cannot be looked at with hindsight, and that a party signing the stipulation cannot later say, "Gee, I wish now I hadn't said that."

Then, after conceding at oral argument that a stipulation is a stipulation, and does not have to be looked behind, respondent argues that item number 8 of the stipulation, "express confusion," does not indicate confusion about what! I could not disagree more. From looking at the stipulation as a whole, I will take judicial notice that item number 8 means it was stipulated that the petitioner was confused by being told in exhibit B, the implied consent advisory, that refusal to take the test is a crime in and of itself, and then next, being told by his attorney not to take the test. I cannot believe in good conscience that the attorneys who wrote this stipulation meant anything other than that clear and precise meaning for item number 8 of the stipulation.

I find these facts squarely under *Lauzon* and *Thurman*, meaning: (1) confusion is not a defense unless it is expressed; (2) confusion was expressed here; (3) the expressed confusion was not cleared up; (4) the driver's refusal was, therefore, reasonable.

I respectfully dissent and would have reversed the district court.