*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1954**

Kimberly Ann McGovern, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant.

**Filed June 1, 2015
Reversed and remanded
Schellhas, Judge**

Dakota County District Court
File No. 19AV-CV-14-592

Peter J. Timmons, Mendota Heights, Minnesota (for respondent)

Lori Swanson, Attorney General, Rory C. Mattson, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Schellhas, Presiding Judge; Reilly, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant challenges the district court's rescission of respondent's driver's license revocation under the implied-consent law that followed respondent's arrest for driving while impaired (DWI) and a urine test that detected the presence of alcohol. We reverse and remand.

## FACTS

Dakota County Sheriff's Deputy Gordon Steffel stopped respondent Kimberly Ann McGovern for speeding in her vehicle on the evening of December 12, 2013. During the traffic stop, McGovern displayed indicia of alcohol consumption and admitted to drinking beer before driving. After field sobriety testing and a preliminary breath test (PBT), Deputy Steffel arrested McGovern for DWI, transported her to the local jail, and read her Minnesota's implied-consent advisory. While in uniform with a sidearm, Deputy Steffel informed McGovern that Minnesota law required her to take a test to determine whether she was under the influence of alcohol, that refusal to take a test was a crime, and that she had the right to consult with an attorney before making her decision about testing.

McGovern spoke with an attorney by telephone. The attorney asked McGovern about the PBT result, the type of chemical test that Deputy Steffel was offering her, and whether Deputy Steffel had or planned to get a search warrant. Deputy Steffel told McGovern that he did not plan to get a search warrant because he did not need one. McGovern told Deputy Steffel that she would submit to a test when Deputy Steffel

obtained a search warrant but that she was not refusing a test. McGovern asked whether she would be taken to jail if she refused a test, and Deputy Steffel reminded her that she was already at the jail and that she would be booked and released regardless of whether she took a test. McGovern stated that she thought the test request was unlawful and that she was "coerced into taking a urine test" because she would be charged with a test refusal if she did not submit to a test. The attorney advised McGovern to submit to a urine test and to arrange for her own blood test, and then McGovern ended the telephone call. She confirmed with Deputy Steffel that she was comfortable with the time she had spent talking to her attorney and with the decision that she was going to make. She refused breath and blood tests and stated that she would take a urine test. The test showed an alcohol concentration of .144.

Appellant Minnesota Commissioner of Public Safety revoked McGovern's driver's license under the implied-consent law, and McGovern challenged the license revocation. At the revocation hearing, the parties agreed to submit the issue of the legality of the urine test to the district court based on stipulated facts and documents submitted into the record. The district court rescinded the license revocation, determining that the commissioner failed to establish that McGovern knowingly and voluntarily consented to the urine test, that there was no applicable exception to the requirement of a search warrant for the test, and that the test was therefore unconstitutional.

This appeal follows.

**D E C I S I O N**

"When the facts are not in dispute, the validity of a search is a question of law subject to de novo review." *Haase v. Comm'r of Pub. Safety*, 679 N.W.2d 743, 745 (Minn. App. 2004). "When reviewing the constitutionality of a search, we independently analyze the undisputed facts to determine whether evidence resulting from the search should be suppressed." *Id.*

The United States and Minnesota Constitutions guarantee the right to be secure against unreasonable searches and seizures. U.S. Const. amend. IV; Minn. Const. art. I, § 10. The taking of a blood, breath, or urine sample is a physical intrusion that constitutes a search. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616–17, 109 S. Ct. 1402, 1412–13 (1989). A search is generally unreasonable unless conducted pursuant to a warrant issued upon probable cause. *Id.* at 619, 109 S. Ct. at 1414. But there are established exceptions to the warrant requirement, one of which is consent to the search. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973)).

Valid consent to search must be freely and voluntarily given, and "[w]hether consent was voluntary is determined by examining the totality of the circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Id.* (quotations omitted). Voluntary consent is that given "without coercion or submission to an assertion of authority," in other words, consent given under circumstances in which a reasonable person would feel free to decline law enforcement's requests or otherwise terminate the encounter. *State v. Dezso*, 512 N.W.2d

4

877, 880 (Minn. 1994); *see also Schneckloth*, 412 U.S. at 225–26, 93 S. Ct. at 2047 (describing coercive encounter as one in which suspect's "will has been overborne and his capacity for self-determination critically impaired").

"[A] driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *State v. Brooks*, 838 N.W.2d 563, 570 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). The language of the implied-consent advisory makes clear that a person has a choice whether to submit to testing, and "the fact that someone submits to the search after being told that he or she can say no to the search supports a finding of voluntariness." *Id.* at 572. Moreover, the supreme court has "recognized that the ability to consult with counsel about an issue supports the conclusion that [the driver] made a voluntary decision" because "an attorney functions as an objective advisor who c[an] explain the alternative choices to the driver." *Id.* at 571–72 (quotation omitted).

Deputy Steffel read McGovern the implied-consent advisory, and she invoked her right to consult with an attorney and did speak with an attorney by telephone. Her attorney asked several questions about McGovern's situation and gave her legal advice. When McGovern ended the telephone call, she confirmed that she was comfortable with the time that she had spent talking with her attorney and with the decision that she was going to make. She refused breath and blood tests before stating that she would take a urine test.

The district court stated that McGovern was confused by and unfamiliar with the implied-consent process and that this indicated that her capacity for self-determination

5

was critically impaired. The district court noted that McGovern interrupted Deputy Steffel's recitation of the implied-consent advisory several times, asked her attorney and Deputy Steffel clarifying questions, and "acted merely as a relay between the attorney and Deputy Steffel." But the purpose of permitting a suspect in McGovern's situation to speak to an attorney is for the attorney to explain, advise, and clear up confusion. *See id.* at 571–72; *Maietta v. Comm'r of Pub. Safety*, 663 N.W.2d 595, 598 (Minn. App. 2003) (stating that caselaw "indicate[s] that it is the responsibility of the attorney, not a police officer, to clear up any confusion on the part of a driver concerning the legal ramifications of test refusal"), *review denied* (Minn. Aug. 19, 2003). Based on the totality of the circumstances, McGovern voluntarily consented to the urine test, a search warrant therefore was unnecessary, and the test was not unconstitutional. The district court erred by rescinding the revocation of McGovern's driver's license.

**Reversed and remanded.**